**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JUDSON LEE BROWN,

Defendant.

**Cause No. CR 26-05-H-BMM**

**ORDER ON MOTION TO SUPPRESS**

## INTRODUCTION

A federal grand jury indicted Judson Lee Brown ("Brown") on one count of Prohibited Person in Possession of Firearms and Ammunition. (Doc. 1.) Brown filed a motion to suppress the following evidence: (1) Colt firearm, model M4, .22 cal., sn: BP0 13370; (2) Heritage Manufacturing revolver, Rough Rider, .22 cal., sn: 1BH970602; (3) Smith & Wesson revolver, model 10-6, .38 cal., sn: D488794; (4) Heritage Manufacturing revolver, Rough Rider, .22 cal., sn: 1BH834461; and (5) all ammunition seized during the search. (Doc. 13.) The Government opposes the motion. (Doc. 16.) The Court held a hearing on the motion on September 8, 2026. (Doc. 27.)

## BACKGROUND

A Montana state district court sentenced Brown to two ten-year suspended sentences with the Montana Department of Correction for convictions of assault with a weapon and criminal endangerment. (Doc. 14-1.) Brown's signed probationary conditions of release contained the following two provisions relevant to his residence and probationary searches:

> 2. The Defendant must obtain prior written approval from his/her supervising officer before taking up residence in any location. The Defendant shall not change his/her place of residence without first obtaining written permission from his/her supervising officer or the officer's designee. The Defendant must make the residence open and available to an officer for a home visit or for a search upon reasonable suspicion. The Defendant will not own dangerous or vicious animals and will not use any device that would hinder an officer from visiting or searching the residence.
>
> 8. Upon reasonable suspicion that the Defendant has violated the conditions of supervision, a probation and parole officer may search the person, vehicle, residence of the Defendant, and the Defendant must submit to such search. A probation and parole officer may authorize a law enforcement agency to conduct a search, provided the probation and parole officer determines reasonable suspicion exists that the Defendant has violated the conditions of supervision.

(Doc. 14 at 3.) Brown also agreed to have his residence approved by his Montana state probation officer. Another of Brown's probationary conditions further stated that Brown's "person, vehicle, and/or residence may be searched at any time" by probation, ISP officer, or law enforcement if the probation officer has reasonable suspicion. (*Id.*)

Brown asserts that 1423 ½ Hilmen Road, Helena, Montana served as his listed residence at the time of the search. (Doc. 14-3.) Brown lived in an RV on his parents' property located at 1423 Hilmen Road (Doc. 14 at 3.) Brown's mother continued to live in the house located at 1423 Hilmen Road after Brown's father died. (*Id.*) Brown admits that he would use the bathroom and kitchen at his parents' house and took care of his mother who recently had heart surgery. (*Id.*) Brown's Montana state probation officer completed a home inspection of Brown's RV at 1423½ Hilmen Road on July 23, 2021. (Doc. 14-4 at 6.) Brown's Montana state probation officer approved his residence. (*Id.*) Brown's probation officer did not complete an inspection of his parent's home located at 1423 Hilmen Road (*Id.*) Brown continued to confirm his residence at 1423½ Hilmen Rd over the next four years. (*Id.*) Brown additionally registered as a violent offender listing his residence at 1423½ Hilmen Road (*Id.*)

Brown's Montana state probation officer filed a report of violation on February 6, 2026, due to Brown's alleged failure to complete his yearly jail time requirements and his attempt at contacting witnesses who had testified against him. (*Id.* at 4.) A Montana state court issued a warrant for Brown's arrest. (*Id.*) Law enforcement officers arrived at 1423 Hilmen Road to execute the arrest warrant on Brown. (*Id.*) A neighbor informed law enforcement officers that he had seen Brown at the house at 1423 Hilmen Road a day earlier. (*Id.*)

Brown walked out the front door of his mother's house wearing only shorts when law enforcement arrived. (Doc. 16 at 5.) Brown communicated with the officers that he lived in the RV at 1423½ Hilmen Road (*Id.*) Brown alleged that he was only staying inside 1423 Hilmen Rd "because he was sick." (*Id.*) Brown's mother corroborated this claim. (*Id.*)

Brown's Montana state probation officer subsequently authorized a search of the house located at 1423 Hilmen Road (*Id.*) Brown contends his probation officer authorized the search because Brown had access to the house "not because it was [Brown's] residence." (*Id.*) Law enforcement officers conducted a search of the room in which Brown had been sleeping on the morning of the search. (*Id.*) Law enforcement officers located four firearms and ammunition inside the room. (*Id.*) A search of Brown's mother's room also revealed another firearm. (*Id.*)

## LEGAL STANDARD

The Fourth Amendment guarantees the right to be free from unreasonable search and seizure. U.S. Cont. Amend. IV. Police and parole officers lawfully may search parolees/probationers and their residences without meeting the Fourth Amendment warrant requirement under two conditions. *United States v. Grandberry,* 730 F.3d 968, 973 (9th Cir. 2013); *U.S. v. Davis*, 932 F.2d 753, 758 (9th Cir. 1991) (applying the same standard to parolees and probationers). First, the probationer must be subject to a provision allowing for such searches. *Grandberry,* 730 F.3d at

973. Second, "law enforcement officers must have probable cause to believe that the [probationer] is a resident of the house to be searched." *Id.* (quotations omitted).

Probable cause that a residence serves as the probationer's residence "exists if an officer of reasonable caution would believe, based on the totality of the circumstances that a [probationer] lives at a particular residence." *Id.* at 975. Probable cause requires that officers possess "strong evidence" that the place to be searched serves as the probationer's residence. *Cuevas v. de Roco*, 531 F.3d 726, 736 (9th Cir. 2008). The determination of probable cause remains based on "the totality of the circumstances known to the officers at the time of the search," *Grandberry*, 730 F.3d at 976, n. 6 (*citing Lacey v. Maricopa Cnty.,* 693 F.3d 896, 918 (9th Cir.2012) (*en banc*) *and* LaFave, Search and Seizure § 11.3.)

## DISCUSSION

Brown argues for the suppression of the firearms and ammunition found inside the house at 1423 Hilmen Road. (Doc. 13.) Brown argues that his probation officer lacked probable cause to believe he resided in the house at 1423 Hilmen Road. (*Id.* at 2.) Brown contends, in the alternative, that Brown's probation officer lacked reasonable suspicion of criminal activity to warrant a search of 1423 Hilmen Road. (*Id.*) The Court will address whether the search of 1423 Hilmen Road proved improper to exclude evidence of the firearms and ammunition obtained during the search.

## I. Whether Brown's probation officer possessed probable cause to believe Brown resided at 1423 Hilmen Road.

Courts consider the following factors in determining whether probable cause existed to believe that a probationer lives in the place to be searched: (1) whether the probationer appears to be residing any place other than the one searched; (2) whether there were any direct observations by the officers giving them good reason to suspect that the probationer was residing in the place to be searched; (3) whether the probationer was in possession of a key to the place to be searched; and (4) whether the probationer or any other residents identified the place to be searched as being the probationer's primary residence. *Grandberry*, 730 F.3d at 976. These factors should be considered cumulatively. (*Id.*) The first and second factors remain disputed here.

### A. Whether the probationer appears to be residing any place other than the one searched.

The first factor requires the Court to determine whether the RV should be considered a residence separate from the property of 1423 Hilmen Road as a whole. As this Court has found and the Ninth Circuit has upheld, "the probable-cause-as-to-residence determination extends to the entire property." *United States v. Hamper,* No. 23-1087, 2024 WL 2077501 at *1 (9th Cir. 2024). The Ninth Circuit suggests in *Hamper* that the search of an entire street address with several dwellings would be valid only if "'defendants are in control of the whole premises,

if the dwellings are occupied in common, or if the entire property is suspect.'" *Hamper,* 2024 WL 2077501 at *1 (quoting *United States v.Alexander,* 761 F.2d 1294, 1301 (9th Cir. 1985).

The Government argues that Brown was "clearly a co-resident" in his mother's house at 1423 Helman Road. (Doc 16. At 10.) The Government argues that Brown may have slept primarily in the RV, but "it cannot be considered his exclusive residence when it was not even equipped with the most basic sanitation and kitchen facilities" and Brown "continuously used the main house for the bathroom and kitchen." (*Id.*) The Government also asserts that an officer noted that Brown had no clothing or other possessions inside the RV on a previous visit to the RV. (*Id.*)

The Court agrees. Brown did not possess exclusive control over his mother's house at 1423 Helman Road. Brown clearly occupied his mother's house in common with his mother. Brown had access to everything in his mother's house, consistently used the kitchen and bathroom facilities, and admitted to sleeping in the house at least at the time of the search. (Doc. 16 at 7, 10.) Brown may have registered the RV as 1423½ Hilmen Road to distinguish it from his mother's house. No meaningful distinction exists, however, between the RV and the property at large in terms of Brown's control and occupancy.

Brown and the Government debate the applicability of *State v. Thomas* on whether an RV falls within the scope of a search or a "residence." *State v. Thomas*, 471 P.3d 733 (Mont. 2020). The facts in *Thomas* differ. The appellant in *Thomas* rented a detached outbuilding on property owned by a Montana state probationer for $400 per month. *Thomas*, 471 P.3d at 735. The state probationer lived in a trailer house on the same property. *Id.* A state probation officer searched the appellant's rented outbuilding during a probation search of the state probationer's property. *Id.*

The outbuilding rented by the appellant lacked running water, plumbing, a bathroom, or kitchen facilities, but was wired for electricity and had a light switch. *Id.* The outbuilding was large enough for a bed, desk, and end tables. *Id.* The appellant spent most of his time in the outbuilding but did use the toilet and shower, and occasionally the kitchen, in the main trailer residence. *Id.* The appellant and his wife kept all their belongings in the outbuilding. *Id.* The record indicated that the state probationer "did not reside in or access the outbuilding she rented to [the appellant]." *Id.* And the appellant generally kept the outbuilding locked, with a padlock when away and an interior door wedge when at home. *Id.* Finally, the appellant was not on probation and not subject to the warrantless search condition. *Id.*

Brown similarly had access to his mother's house and regularly used its bathroom and kitchen facilities. (Doc. 14 at 7-8.) By contrast, the state probationer in *Thomas* lacked access to the detached outbuilding rented by the appellant. *Thomas*, 471 P.3d at 737. Law enforcement had violated the appellant's reasonable expectation of privacy when it searched appellant's rented outbuilding as part of a probation search of the property owner's residence. *Id.* at 184. Brown is the subject of the probation search, he had constant access to his mother's house, and he kept very few belongings in the RV. (Doc. 16 at 10-11.) The house and RV parked at 1423 Hilmen Road both served as Brown's residence for the purposes of the probation search condition.

**B. Whether any direct observations by the officers provided them good reason to suspect that the probationer was residing in the place to be searched.**

The Court has concluded that the RV did not constitute a separate residence from Brown's mother's house for purposes of a probationary search. As a result, the appropriate analysis here is whether the officers had "good reason to suspect" that the probationer was residing at 1423 Hilmen Road. *Grandberry*, 730 F.3d at 976. The Court concludes that they d*Id.*

Brown consistently had listed his address at 1423½ Hilmen Road. Officers knew that Brown resided on his mother's property. (Doc. 20 at 2.) Officers received confirmation from a neighbor who had seen Brown at the residence the

day before his arrest. (Doc. 16 at 5.) The neighbor also confirmed that Brown drove his mother's car, which was parked in the driveway of 1423 Hilmen Road (*Id.*) Brown exited his mother's house on the morning of the search upon arrival of the officers wearing only his shorts on a cold day. (*Id.*) Brown admitted to having been sleeping in his mother's house on the morning of the search. More than sufficient evidence exists to indicate 1423 Hilmen Road served as Brown's registered, and in fact, residence.

Defendant cites various precedents to argue that Brown's state of dress, overnight stay, and the Government's lack of surveillance of Brown's residence were not sufficient to give rise to probable cause that Brown resided in his mother's house. These precedents all involve whether officers had probable cause to believe that a probationer was residing at a *separate* residence. *Grandberry,* 730 F.3d 968; *Watts v. County of Sacramento,* 256 F.3d 886 (9th Cir. 2001). For example, the defendant in *Grandberry* successfully challenged a probation search of his girlfriend's apartment based on the fact that he enjoyed overnight access to the apartment. *Grandberry*, 730 F.3d at 971-72. The apartment was in a different building several miles from the defendant's residence. *Id.* Brown lived on the same property as his mother and the Court has determined that the various structures at 1423 Hilmen Road should be treated as a single residence.

**C. Whether Brown's probation officer had the requisite level of suspicion to authorize a search of 1423 Hilmen Road.**

Brown argues that officers also needed to have reasonable suspicion of "criminal activity" in order to search. (Doc. 14 at 10.) Brown asserts that the officers lacked the required reasonable suspicion as the alleged probation violations were not criminal in nature. (*Id.*) Brown additionally argues that no evidence of his alleged violations could be found in his mother's house, and, therefore, the search of his mother's house proved unrelated to the violations and was thus impermissible. (*Id.*) The Government does not address this argument in its reply.

U.S. Supreme Court precedent directs that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Samson v. California,* 547 U.S. 843, 857 (2006). The Ninth Circuit maintains that the residence determination still requires probable cause, but "*Samson* allows parole searches without suspicion of *wrongdoing*." *Grandberry*, 730 F.3d at 974. A violation of a probation condition under this analysis would prove sufficient to support a warrantless search pursuant to a valid search condition, regardless of the officers' level of suspicion regarding criminal activity.

Brown's probation condition allows for the search of Brown's residence "[u]pon reasonable suspicion that the Defendant has violated the conditions of supervision . . .." (Doc. 14 at 3.) By the language of the condition, the officer must

have reasonable suspicion only that Brown had violated the conditions of his supervision. The Government sufficiently alleges that it possessed evidence of those violations. (Doc. 16 at 4-5.) Under *Samson* and its application in *Grandberry,* the Government did not need additional suspicion past that required to fulfill the search condition. The Government validly searched Brown's residence at 1423 Hilmen Road without suspicion of current criminal activity.

## CONCLUSION

For the probationary search in this case to be valid, it was required to be pursuant to a valid search condition and of a home that law enforcement has probable cause to believe was Brown's residence. The Court finds that the RV on the property of 1423 Hilmen Road was inseparable from the rest of the property for the purpose of determining Brown's residence. The Court finds that the search was proper pursuant to a valid search condition. The Court therefore finds that the search of 1423 Hilmen Road was val*Id.*

## ORDER

Accordingly, **IT IS ORDERED** that Brown's Motion to Suppress (Doc. 13) is **DENIED.**

DATED this 1st day of October 2026

Brian Morris

Brian Morris, Chief District Judge
United States District Court